IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-CR-216-FL-7

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| MOHAMMAD OMAR ALY HASSAN, | ) | |
| | ) | |
| Defendant, | ) | |

This case came before the court for sentencing January 13, 2012, upon return of guilty verdict on the first count lodged against this defendant, conspiracy to provide material support to terrorists in violation of 18 U.S.C. § 2339A. Defendant was found not guilty on the second count, conspiracy to murder, kidnap, maim and injure persons in a foreign country pursuant to 18 U.S.C. § 956(a). Lengthy presentence report by the United States Probation Officer ("officer") memorialized defendant's numerous sentencing objections.[1]

The court commenced at hearing to determine the advice of the United States Sentencing Guidelines ("Guidelines" or "USSG"), a tool implemented by Congress to suggest an appropriate sentence based primarily on the severity of the defendant's criminal conduct and the extent of his previous criminal history. The court may accept any undisputed portion of the presentence report as a finding of fact in establishing the Guidelines range, must decide any objection bearing on the advisory Guidelines, and has substantial discretion to impose a sentence above or below the advisory

---

[1] Defendant filed pre-hearing submission on the docket at entry number 1629 which focuses on the § 3553 factors and includes a motion for downward variance, supported by affidavits and other materials.

range if such a sentence is necessary to accomplish the goals of sentencing.

To the extent defendant promoted certain factual objections, including objection that the offense conduct did not conclude in 2009, but rather in 2007, when his contact with co-defendant Daniel Boyd stopped, and that his overseas travel was for benign reasons, these objections were overruled. The evidence presented at trial, resulting in conviction, also contradicts this contention. While there were innocent reasons for defendant's overseas travels in 2007, the evidence demonstrated this travel was undertaken also to promote his effort to become a mujahideen and fight on a battlefield, as noted in the record and discussed further below.

Defendant continued after 2007 to train including with respect to weaponry as well as heightened physical fitness. He continued close association with co-defendant Ziyad Yaghi ("Yaghi"), who promoted another young man also to the attention of defendant Daniel Boyd, in subscription to violent jihad during the relevant time period. In 2008, defendant Yaghi facilitated introduction of Jude Mohammad to Daniel Boyd.[2] This defendant was in the company of defendant Yaghi when the two presented themselves at defendant Daniel Boyd's food market, a gathering place for extremists, upon return from their trip overseas in 2007, and continued thereafter their close association, which the evidence showed devolved in some large part around a corrupt ideology intent on committing harm to non-Muslims.

Defendant Hassan together with defendant Yaghi persisted in subsequent years to promote violence through their words, and endorsement of the teachings of others intent on violent jihad,

---

[2] Defendant Yaghi had assumed occupancy of Jude Mohammad's apartment after his flight overseas and, Mohammad's mother believed, knew where her son, a co-defendant, had fled to in furtherance of his determination to find a way to the battlefield in October 2008. While refusing her entreaty also to discuss Daniel Boyd, testimony at trial supported that defendant Yaghi told Mohammad she could find her son where defendant Yaghi (and defendant Hassan) had traveled to in 2007.

2

including with regard to works of Anwar al-Awlaki, by then well-established in Yemen with al-Qaeda. Defendant Hassan in fact was in contact with al-Awlaki directly in 2009, the evidence showed.

Defendant Hassan resisted efforts of the Federal Bureau of Investigation ("FBI") to provide information. The evidence also showed that this defendant sought to avoid discovery of certain written overtures he made in support of terrorism in 2009, while incarcerated on unrelated charges. There is sufficient evidence to show by a preponderance that defendant Hassan persisted in the conspiracy, albeit without direct contact with Daniel Boyd after 2007.

Defendant Hassan also objects that he does not know Bajram Asllani. No evidence was presented that this defendant personally is acquainted with Asllani. In this respect, objection was sustained.

Defendant Hassan objects to a base level offense of 33. He contends that under USSG § 2M5.3, the base offense level should be 26. The basis of the objection is that defendant's base offense level should be computed without reference to § 956(a) because Hassan was acquitted of that charge. In support of this objection, Hassan cites his lengthy discussion of why the terrorism enhancement should not be applied. This does not follow, as the court concluded, where application of the terrorism enhancement is considered regardless of whether or not defendant Hassan was convicted of § 956(a), and Hassan fails to show how this dispute over application of the terrorism enhancement dictates that USSG § 2X1.1 should not be used to compute the base offense level.

USSG § 2X1.1 provides the base offense level for attempt, solicitation, or conspiracy. Subsection (a) provides that the base offense level is the base offense level for the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that

3

can be established with reasonable certainty. Subsection (b) provides various scenarios for decreasing the base offense level, however, subsection (d) states that subsection (b) shall not apply to several specifically enumerated offenses, including 18 U.S.C. § 2339A.

USSG § 2X3.1 provides that for aiding and abetting, the offense level is the same as that for the underlying offense. The application note specifically references § 2339A, and provides that "underlying offense" for violation of that statute means "the offense the defendant is convicted of having materially supported or provided or collected funds for, prior to or during its commission." As the officer noted, the sentencing authority then looks to the base offense level for § 956(a) which, according to § 2A1.5, is 33.

Case law implicitly suggests that § 2X1.1 is the correct guideline to apply for § 2339A. Cf. United States v. Abu Ali, 528 F.3d 210, 264 (4th Cir. 2008) (citing § 2X1.1 in discussing sentencing of defendant convicted of § 2339A); United States v. Stewart, 590 F.3d 93, 177-78 (2d. Cir. 2009) (citing § 2X1.1 in the context of a conviction for § 2339A). The court discerns no authority suggesting that § 2M5.3 should be applied instead of §2X1.1. Cf. United States v. Chandia, 514 F.3d 365, 370-71 (4th Cir. 2008) (citation of § 2M5.3 in the context of a case where defendant was acquitted of § 2339A).

Defendant Hassan objects also to the enhancement for the obstruction of justice. Defendant's affidavit was offered describing among other things the conduct leading to the application of this enhancement. The officer applied this enhancement because of a recorded telephone call between Hassan and Sonya Zaghloul ("Zhaghloul") which took place January 14, 2009, while Hassan was in custody on unrelated state charges. From jail, this defendant called Zhaghloul and directed his paramour to delete a certain video and deactivate his Facebook account. Hassan also directed

4

Zhaghloul to a private Facebook group, "Muslim Gangsta for Life," and instructed her to delete Hassan's postings, messages, etc. The officer contends that Hassan was aware the FBI was investigating him, as appears in the record, and that the enhancement properly is applied. Defendant Hassan, however, contends that his direction to Zaghloul was in reference to his state charges at the time. He states he "had no clue" he was going to be federally indicted months later.

USSG § 3C1.1 provides that if the defendant willfully obstructed or impeded or attempted to obstruct or impede the administration of justice "with respect to the investigation, prosecution, or sentencing of the instant offense or conviction," and the obstructive conduct related to the offense of conviction and any relevant conduct, a two level increase is warranted. The application notes provide that destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation is the type of conduct to which the enhancement applies. § 3C1.1 n.4(D). The notes define "material evidence" as evidence that if believed would tend to influence or affect the issue under determination. Id. n.6.

The application of this enhancement requires a factual determination by the district court. United States v. McCreary, 2011 WL 3510379 at *1 (4th Cir. 2011) (citing United States v. Miller, 607 F.3d 144, 148 (5th Cir. 2010)). The evidence destroyed here (postings on the "Muslim Gangsta for Life" group) meets the materiality threshold as it would have been probative evidence of defendant Hassan's statement of mind regarding his training and his beliefs, similar to other evidence offered at trial for this purpose. A recording of the telephone call to Zaghloul was submitted to the jury at trial as probative evidence of defendant Hassan's guilt. Hassan was well aware he was under federal investigation at the time of his 2009 arrest, where it appears he was on a first name basis with a certain FBI officer by that time, who had attempted several discussions with him. The court found

5

by a preponderance of the evidence that defendant Hassan directed Zhaghloul to destroy material to hinder the federal investigation. Therefore, the enhancement properly was applied. See United States v. Dowdell, 306 F. App'x 16 at *5 (4th Cir. 2009); United States v. Haile, 292 F. App'x 224, 226 (4th Cir. 2008).

Many of this defendant's factual objections renew factual arguments in successive Rule 29 motions for acquittal, which the court heard earlier and found were without merit. The government has filed a Motion to Deny Defendant's Demands and Objections Relative to the Pre-Sentence Report (DE # 1612). This motion appears to be an objection to the manner in which this defendant seeks to insert material into the report, in expansion of his factual arguments. The court denied as moot the government's motion. Issues related to perceived necessity of this defendant to expound on the officer's recitation of particular objections were addressed in part through allowance of several letters from counsel to be included as an addendum to the report. This treatment of the material satisfied the defendant.

Related factual objections that the court should assess more particularly asserted conduct underlying his state convictions has little bearing on the advice of the Guidelines and was discounted in this context. The court reflected again on defendant's arguments in assessing sentencing factors, however.

Effort to distinguish defendant's conduct based on the not guilty verdict as to count 2, and argue that this acquittal negates defendant's intent to engage in violent jihad outside the United States, could not be sanctioned. Defendant's acquittal has profound influence, however, on the advisory Guidelines where otherwise the court would have been advised to sentence defendant to life.

6

Legal objections to enhancements under USSG § 3A1.1(a) for intentionally selecting any victim or property because of the actual or perceived race, color, religion, national origin, or ethnicity;[3] § 3A1.2 for targeting official victims;[4] and § 3A1.4, the terrorism enhancement[5]

---

[3] USSG § 3A1.1(a) provides that if the court at sentencing determines beyond a reasonable doubt that the defendant intentionally selected any victim or any property as the object of the offense of conviction "because of the actual or perceived race, color, religion, national origin, ethnicity, gender, gender identity, disability, or sexual orientation of any person," the offense level should be increased by three. The advisory notes to the guideline reference that it is meant to apply to hate crimes. There is no Fourth Circuit case on point able to be located. The officer cites In re Terrorist Bombings of U.S. Embassies in E. Af., 552 F.3d 93 (2d Cir. 2008) for application of the enhancement. In that case, a jury convicted the defendants of many crimes, including conspiracy to murder internationally protected persons, United States officers, and employees engaging in official duties, conspiracy to destroy buildings and property of the United States, and conspiracy to use weapons of mass destruction against United States nationals and property overseas. The Second Circuit found the enhancement properly applied, noting "[t]he hate crime enhancement applies if the defendant 'intentionally selected any victim' on the basis of one of the factors listed [in § 3A1.1(a)] and, because there can be no 'good reasons' for doing so, the underlying motivation of [defendants] is simply beside the point." 552 F.3d at 93. A court in the Southern District of New York also applied the enhancement. See United States v. Cromitie, 2011 WL 2693293, *7 (S.D.N.Y. 2011) (applying enhancement after jury convicted defendants of conspiring to bomb synagogue). Both In re Terrorist Bombings and Cromitie have very different facts from those at issue in this case, however. Nonetheless, the application is properly applied where this defendant intentionally selected victims beyond a reasonable doubt based on religion, national origin, and/or ethnicity. Defendant conspired to commit terrorist acts aimed at "kuffar," or non-Muslims, and focused substantial effort in planning and readiness for battle against those targeted. This defendant acknowledged he did make disparaging remarks but denies he intentionally selected any victim. Notwithstanding that effort to distinguish his conduct, for reasons given here and noted at hearing, the court overruled his objection.

[4] Defendant notes that at trial, the government offered no evidence that he conspired to injure a government officer or employee. USSG § 3A1.2 provides that a three level enhancement should be applied if the victim was a government officer or employee and the offense of conviction was motivated by such status. As to this defendant, for reasons noted on the record, the court determined this enhancement was not properly applied, and sustained the objection (also as to defendant Yaghi).

[5] USSG § 3A1.4 provides that "if the offense is a felony that involved, or was intended to promote, a federal crime of terrorism, increase by 12 levels; but if the resulting offense level is less than level 32, increase to level 32." § 3A1.4(a). Subsection (b) provides that in every such case the defendant's criminal history shall be a category VI. The application notes to § 3A1.4 reference the definition of "federal crime of terrorism" as provided in 18 U.S.C. § 2332b(g)(5). That statute defines "federal crime of terrorism" as an offense that

> (A) is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct; and
>
> (B) is a violation of [providing list of statutes, including § 956(a) (conspiracy to murder, kidnap, or maim persons abroad ) and § 2339A (providing material support to terrorists)].

§ 2332b(g)(5)(B)(i).

(continued...)

(a significant driver of the Guidelines' advice), vigorously were argued.

Defendant Hassan, together with defendant Yaghi, argue they are entitled to a reduction for being minimal participants. USSG § 3B1.2(a) provides for a four level decrease in the offense level where "the defendant was a minimal participant in any criminal activity." The section is to be applied only for a defendant "who plays a part in committing the offense that makes him substantially less culpable than the average participant." Id., app. n. 3(A) (emphasis added). The application notes further explain that a "minimal participant" contemplates:

> Defendants who are plainly among the least culpable of those involved in the conduct of a group. . . defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant.

---

[5](...continued)
The case of United States v. Chandia, 395 F. App'x 53 (4th Cir. 2010) (per curiam) was thoughtfully argued by both sides. Chandia is instructive for its emphasis on the necessity for specific findings to be made when this enhancement is considered. It is noted that other courts have declined to apply it. See United States v. Khan, 461 F.3d 477 (4th Cir. 2006) (revealing that the "district court chose to sentence [one defendant] well below the range recommended by the sentencing guidelines" but including no discussion at all about the terrorism enhancement or its application); United States v. Stewart, 590 F.3d 93, 138 (2d Cir. 2009) (quoting Chandia and noting that failure to apply the enhancement was not error when the government showed no facts supporting the specific intent necessary for the enhancement). Unlike in Chandia, specific facts are urged by the United States Probation Office to be considered in this case upon which the officer contends the enhancement is warranted. Concerning this defendant, reference at hearing was made to the fact defendant built a relationship with co-defendant Yaghi, based on their shared view of Islam, including the goal of waging violent jihad in various parts of the world. Defendant Yaghi introduced Hassan to defendant Daniel Boyd, and together with Yaghi he became part of a loose group of conspirators whose goal was to kill non-Muslims, specifically those they believed were living unjustly in Muslim lands. In 2007, the court found that defendant traveled to find those who could assist him and defendant Yaghi to join the mujahideen. It was defendant's intention to have contact also with defendant Daniel Boyd on this trip, and benefit of his associations while traveling. Defendant's trip had been in part arranged by Daniel Boyd and timed to Daniel Boyd's travel. While there were legitimate reasons for the trip overseas, where Israel was the destination, defendant's sinister intent was manifest. His contact with defendant Yaghi, who had traveled to Jordan the year before, with the same intent to join mujahideen fighting non-Muslims overseas, was maintained long distance, during Yaghi's 2006 trip. In a pre-trip meeting with Boyd before their journey overseas in 2007, this defendant and defendant Yaghi brandished a firearm to Daniel Boyd in veiled reference to their shared goals. Defendant Daniel Boyd testified to his understanding that both co-defendants had desire to find the way to a battlefield in 2007. This defendant advanced jihadist propaganda including the teachings of Anwar al-Awlaki, and created and disseminated his own rhetoric on the Internet. In 2008, for example, he posted a training video which included graphics and a caption alluding to "Support our Troops," which reasonably was interpreted by viewers to be a promotion of violent jihad. Upon these and other findings made at hearing, over defendant's vigorous objection, and despite the fact of his acquittal on count 2, the court found that clear and convincing evidence supports that defendant had the requisite intent for application of the enhancement as defined in § 2332b(g)(5)(B)(I).

8

> It is intended that the downward adjustment for a minimal participant
> will be used infrequently.

Id., app. n.4 (emphasis added).

The Fourth Circuit has held that application of § 3B1.2 is a function of a defendant's culpability. United States v. White, 875 F.2d 427, 434 (4th Cir. 1989). In determining whether a defendant is entitled to a minimal participant reduction, the court must consider the defendant's conduct relative to the conduct of others involved in the same criminal activity as well as his conduct relative to the elements of conviction. United States v. Akinkoye, 185 F.3d 192, 202 (4th Cir. 1999). In considering the defendant's conduct relative to the elements of conviction, a court must decide whether the defendant's conduct is material or essential to committing the offense. Id.

The defendant bears the burden of demonstrating by a preponderance of the evidence his entitlement to an offense level reduction. United States v. Pratt, 239 F.3d 640, 645 (4th Cir. 2001); United States v. Gordon, 895 F.2d 932, 935 (4th Cir. 1990). Hassan cannot satisfy this burden. He has not demonstrated by a preponderance of the evidence that his culpability is of a lesser degree to warrant a reduction, as reflected in the record. The issue is whether this defendant is less culpable when one looks at his conduct relative to the elements of the offenses of conviction. Akinkoye, 185 F.3d at 202. The defendant participated in conduct meeting the requirements of the offense of conviction, and a minimal role reduction is not warranted.

Over the objections of defendant, and for other reasons set forth on the record, the court concluded that the officer correctly determined the advice of the Guidelines to be 15 years, with this advice grounded on the statutory maximum term of imprisonment.

The court allowed the parties opportunity to argue for whatever sentence they deemed

9

appropriate. As noted, the government advocated for a sentence of 15 years in prison. Also as noted on the record, defendant's argument advanced propriety of a downward variance. The uniqueness of this defendant who was acquitted of the crime charged in count 2 resonated.

In mitigation, reference was made to defendant's family relationships, and certain conflict among them also involving his relationship with Zhaghloul, his relative youth, education, and stated regret for dissemination of jihadist propaganda. Counsel ably argued on defendant's behalf at hearing and in his pre-hearing written submission. In furtherance of the court's determination of sentence, letters received by the court in support of defendant also were reviewed in addition to defendant's own statement by affidavit, and affidavits of Zaghloul, among others.

The court addressed the defendant personally in order to permit him to speak or present any information to mitigate the sentence. Defendant disavowed terrorism and indicated his desire to teach others about the pitfalls of harmful internet postings. Defendant's actions were sought to be excused as misinterpreted and/or misunderstood.

The court considered the factors set forth in 18 U.S.C. § 3553, with deference to the overarching provision that it must impose a sentence sufficient, but not greater than necessary to accomplish the goals of sentencing. In addition to the nature and circumstances of the offense and the history and characteristics of the defendant, established objectives for sentencing that the court must consider under § 3553 include: promoting respect for the law; providing just punishment for the offense; affording adequate deterrence; protecting the public from further criminal activity of the defendant; providing the defendant training, medical care, and correctional treatment; and providing restitution to the victims of the offense. Restitution is not an issue in the case.

In considering the § 3553 factors, the court made an individualized assessment based on the

facts presented. The court considered the parties' arguments and its own legal decision-making authority, without assuming a sentence within the Guidelines is a reasonable one. However, the court determined a Guideline sentence is warranted in this case, for reasons given.

The court's assessment of this defendant reflected on his involvement in the offense of conviction and the serious nature of the crime at issue in count 1. The court considered his established criminal history, where defendant, now 24, began at the age of 16 to engage in criminal conduct. Defendant regularly was in contact with the state criminal justice system, first for assault by pointing a gun at 16, then physical assault on a female four years later. Defendant's next conviction was for false imprisonment where he and Yaghi, a co-defendant in this case, and another individual kidnaped and restrained a college student. Defendant also has a drug conviction arising from a charge of marijuana possession which appears related in time to the conviction for false imprisonment. This record, without regard to the terrorist enhancement, under the Guidelines results in his classification as a mid-level offender, in category III.[6]

Defendant's propensities evidence disregard for the liberty and property rights of others, and his ready resort to force. Pointing a BB gun at the age of 16, using his hands at the age of 20, where as a result of his assault on Zaghloul, while disputed now, defendant completed the Constrain Batterer Intervention Program as a part of his punishment, and in this case as the evidence would show, his possession of a .22-caliber rifle and limited testing of more powerful weaponry, while enhancing his physical fitness in continued offensive training, all underscore defendant's readiness

---

[6] Defendant Hassan offered factual objections to his prior convictions, urging that while he pleaded guilty, he did not participate in certain conduct underlying the offenses. The court was not persuaded by various documents from friends or members of the community attesting that defendant Hassan did not commit the past offenses and that his accusers are liars and cannot be trusted.

11

to fight. With his limited resources, defendant advanced himself to a place in 2007 with a like-minded conspirator, from which he thought he could make his way onto a battlefield with benefit, too, of defendant Daniel Boyd's specific mentoring. In reliance on Elena Mohammad's testimony at trial (where the court found this witness, the mother of a co-conspirator, credible and reliable), Hassan and Yagi went to the place in 2007, by defendant Yaghi's own admission, from which her son launched his effort to reach a battlefield in 2008. Jude Mohammad remains overseas.

His association here and abroad with individuals intent on advancing a destructive ideology, cloaked in adherence to an extremist view of Islam, which propagated violence against anyone perceived as being in Muslim lands unjustly, coupled with his demonstrated disregard for the law, underscore this defendant's dangerousness. Defendant plunged himself into radicalism, fanned for a time by Daniel Boyd, committed to the teachings of al-Awlaki and other promoters of jihadist propaganda, and influenced by Yaghi. Of his own initiative, of his own determination, he, too, advanced necessity for battle against non-adherents and acted in furtherance of the conspirators' goals. Hassan took concrete steps in furtherance of the commission of this violent offense.

His characteristics, including demonstrated violent tendencies, coupled with the nature of the offense and his involvement therein, and other matters of record, all serve to underscore need for the sentence in this case to discourage this type of conduct, promote respect for the law, and protect the public from defendant. Reference is made more particularly to the record developed upon sentencing hearing, for all of the matters considered in determination that defendant be imprisoned for a term of 180 months, which coupled with other conditions enunciated at sentencing, accomplishes the purposes of sentencing.

This the 18th day of January, 2012.

                                            LOUISE W. FLANAGAN  
                                            United States District Judge